## 14040. Dixon v. Martin-Saunders Company.

Broyles, C. J. This was a claim case. The verdict in favor of the plaintiff in fi. fa. was not authorized by the evidence, and the court erred in overruling the motion for a new trial.

*Judgment reversed. Luke and Bloodworth, JJ., concur.*

Decided March 7, 1923.

Levy and claim; from city court of Hinesville — Judge W. C. Hodges. September 18, 1922.

The wife of John Dixon claimed as her own property a horse and a buggy and harness levied on as his property. The person in possession of the property at the time of the levy was not disclosed by the entry on the execution. The plaintiff in fi. fa. assumed the burden of proof and introduced only one witness. This witness testified, that he sold the horse to John Dixon "several years ago," and Dixon did not, so far as the witness remembered, say that he was buying it for his wife; that Dixon paid for the horse mostly in work; paid some each month and took receipts," and made the last payment in money,— $20; and that afterwards he brought back the receipts and "made it all in one receipt to his wife, Henrietta Dixon," the claimant. This receipt was dated September 30, 1918, and was for "$100.00, full payment on horse." The judgment on which the execution was based was rendered in 1921.

For the claimant, John Dixon testified: "The horse in question belongs to my wife Henrietta Dixon. I bought it from Mr. Shuptrine [the preceding witness] for her, between four and five years ago. I took it to her at the time I bought it for her, and turned it over to her, and she has had the entire possession of it and control of it ever since I got it from Mr. Shuptrine. I haven't any property in the world. . . My wife inherited the place where we live, and it doesn't belong to me. I paid Mr. Shuptrine a part of the money for the horse in work; $55 of the price of the horse was paid in money sent him by my wife, Henrietta. I turned the horse over to her before she sent the money to pay on the horse. She has had this property between four and five years. I let my work go on this horse because my wife furnished her money to run the house, and we exchanged this way, and I made it up to her this way. We lived together as husband and wife on my wife's place, and this

horse was kept on the place where we lived." The claimant testified: "I bought this horse through my husband, John Dixon, and had it between four and five years. I kept it on my own place that I own by inheritance. My husband bought this horse from Mr. Shuptrine for me and turned it over to me as soon as he bought, and he had nothing more to do with it. I had full control and ownership of this property all the time. My husband never had any control of it from the time he brought it to me. I hired it out sometimes and controlled it all the time. I sent Mr. Shuptrine $55 in money by John Dixon to pay on what I was owing on the horse. I made some of the money working, and some I borrowed from my sister. I got the buggy and harness at the same time. The buggy and harness is mine and I have had it between four and five years." The jury found "against the claimant," and the court overruled her motion for a new trial.

*N. J. Norman,* for plaintiff in error. *Darsey & Mills,* contra.